# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

PATTY M. CONDLEY                                                                 PLAINTIFF

V.                              NO. 4:18CV00439 BSM-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security                                            DEFENDANT

# RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Patty M. Condley ("Condley"), applied for disability benefits on April 11, 2013, alleging disability beginning on December 5, 2012.[1] (Tr. at 417). After conducting a hearing on February 27, 2014, the Administrative Law Judge

---

[1] Condley's date last insured is June 30, 2014, so the relevant time-period runs from December 5, 2012 through June 30, 2014. (Tr. at 417).

("ALJ") denied her application on September 11, 2014. (Tr. at 425). The Appeals Council denied her request for review. (Tr. at 1). Thereafter, on July 27, 2015, Condley filed a complaint in this Court, seeking remand. *See Condley v. Social Security Administration*, 4:15-CV-00462 JTR, (E.D. Ark. October 18, 2016).

In an order dated October 18, 2016, the Court reversed and remanded the ALJ's decision, with instructions to *"further develop the record with necessary medical information,"* which at that point contained only two medical opinions, those of reviewing state-agency doctors. (Tr. at 58, 70, 444).

On November 28, 2016, the Appeals Council issued a remand order consistent with this Court's ruling, and instructed the ALJ to *"take any further action needed to complete the administrative record and issue a new decision…and offer [Condley] the opportunity for a [second] hearing."* (Tr. at 448). Eight new medical exhibits were obtained (Tr. at 576-713), and a second hearing was held on May 30, 2017. (Tr. at 386-413).

In a decision dated September 9, 2017, the same ALJ again denied Condley's application for disability benefits. (Tr. at 374-379). She appealed that ruling to the Appeals Council, which declined review of the ALJ's decision. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Condley has filed a Complaint seeking judicial review from this Court.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. **The Commissioner's Decision:**

The ALJ found that Condley had not engaged in substantial gainful activity from the alleged onset date of December 5, 2012 through the date last insured of June 30, 2014. (Tr. at 376). At Step Two, the ALJ found that Condley had the following severe impairments: osteoarthritis and hypertension. *Id*.

After finding that her impairments did not meet or equal a listed impairment (Tr. at 376), the ALJ determined that Condley had the residual functional capacity ("RFC") to perform the full range of light work, except that she could only occasionally climb, balance, crawl, kneel, stoop, or crouch. (Tr. at 377).

Based on her RFC, the ALJ concluded that Condley was able to perform her past relevant work as a teacher's aide. (Tr. at 379). Thus, the ALJ found that Condley was not disabled. *Id*.

## III. **Discussion:**

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see*

*also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Condley's Arguments on Appeal

Condley contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: (1) the ALJ did not fully develop the record consistent with the instructions of this Court and the Appeals Council; (2) the ALJ erred at Steps Two and Four; and (3) the ALJ's credibility analysis was insufficient. After reviewing the record as a whole, the Court concludes that the ALJ

4

did not err in denying benefits.

Condley suffered from mild arthritis of the feet, knees, and hips. She received conservative treatment, which included physical therapy and medication management. Physical therapy significantly reduced her pain. (Tr. at 240-256).

Two non-examining state-agency doctors reviewed records from Condley's PCP, her physical therapy clinic, and her foot and ankle clinic. (Tr. at 64-68). The PCP observed that Condley's hip pain diminished with a cortisone shot. (Tr. at 273). The foot and ankle doctor found normal range of motion in the knee and ankle, with 5/5 muscle strength bilaterally. (Tr. at 239). He found a deviated hallux with edema. *Id.* X-rays taken in June 2013 showed mild to moderate degenerative changes in the ankle, feet, and knees. (Tr. at 288-296). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). The state-agency doctors noted those x-ray results in their opinions dated June 27, 2013 and July 25, 2013. (Tr. at 58, 70). Both state-agency doctors concluded that Condley could perform light work. (Tr. at 58, 70). There were no treating or examining medical source statements.

After remand, the medical record was further developed, as directed by the Court and the Appeals Council. (Tr. at 377). Indeed, 137 pages of new medical evidence came before the ALJ prior to his decision. (Tr. at 576-713).

According to Condley, the ALJ should have presented the new medical evidence to a consulting physician or the state-agency doctors, or recontacted a treating physician to reevaluate the claim. However, most of the new evidence does *not* relate to the relevant time-period. *Id*; (Tr. at 576-713). Furthermore, the portions of the medical evidence that have a bearing on the relevant time-period were properly discussed by the ALJ (only 2 out of 8 new medical exhibits related to the relevant time-period). (Tr. at 377-379). As to that new medical evidence, the ALJ noted that Condley's hypertension was controlled with medication. *Id*. After reviewing the new records from Condley's PCP, the ALJ noted that, on multiple occasions, her PCP observed that Condley had normal gait and balance, and encouraged her to start Glucosamine for arthritis symptoms. *Id*. Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

The ALJ also noted that Condley took Naproxen for her pain. (Tr. at 378). The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Finally, the ALJ discussed a letter from Owen Kelly, M.D., of River Valley Orthopedics. (Tr. at 379). That letter was dated January 12, 2015, after the relevant time-period. Dr. Kelly said that Condley had pretty significant arthritis, but the ALJ

6

correctly pointed out that Dr. Kelly did not refer to any clinical labs or testing, and he did not indicate any treatment dates or treatment plans. (Tr. at 365, 379). A conclusory source statement has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Thus, the Court concludes that the ALJ based his decision on a fully developed record and properly evaluated and considered the new medical evidence developed after remand.

Condley argues that the ALJ was obligated to order a consultative examination. To the contrary, if such an examination had taken place, it would have placed the physician in the position of using a current physical examination as a basis for speculating about Condley's medical condition and her resulting limitations *almost three years earlier,* during the relevant time-period.

Finally, because the new evidence revealed no new conditions and presented only a few mild findings, as well as conservative treatment regimens, there was no need for the ALJ to recontact the state-agency doctors. Their earlier opinions, which were based on medical evidence generated during the relevant time-period, were still consistent with the new evidence. Thus, nothing in the record, including the new medical evidence, suggests that the state-agency doctors would have changed their findings.

After the remand of this case, Condley had a year and a half to submit any new medical evidence from the relevant time-period to bolster her case. It is well-settled that a claimant has the burden of proving her disability – not the ALJ. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). After carefully considering the 700-page record, the Court concludes that substantial medical evidence supports the ALJ's decision and that the ALJ was under no obligation to conduct a fishing expedition for more medical records.

Finally, while Condley argues that the ALJ should have ordered a consultative examination, it is important to note that both the District Court and the Appeals Council instructed the ALJ to take only those actions necessary to complete the administrative record. (Tr. at 441-449). The ALJ was not ordered to obtain a consultative examination, and as previously explained, having a doctor guess about a claimant's medical condition and physical limitations, three or more years earlier, makes little sense and would have been of little, if any, probative value.

Next, Condley argues that the ALJ erred at Step Two in evaluating her severe impairments. Specifically, she argues that the ALJ should have found her glaucoma,

8

obstructive sleep apnea, and ganglion cysts to be severe impairments. *Doc. No.* 8-2 at 10. A claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

Nothing in the record supports Condley's claim that the above impairments substantially limited her daily activities. Indeed, she could drive, shop, sew, work in her yard, go to church, and do some chores. (Tr. 160-167). Similarly, no doctor placed any restriction on her based on the above impairments, or based on any impairment at all. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). Finally, Condley said that medicine controlled her glaucoma and a CPAP helped her with sleep apnea. (Tr. at 41-44). Thus, the Court concludes that Condley's Step Two argument is without merit.

Third, Condley argues that her past work as a part-time "teacher's aide" did not reach the earnings level to qualify as substantial gainful activity "SGA," so the ALJ erred in considering the "teacher's aide" job as past relevant work.[2]

Condley argues that because her earnings were $5.00 less per month than SGA level in 2002 and $7.00 less per month than SGA level in 2003, her past relevant work did not meet SGA. Earnings below the guidelines are not always inconsistent with SGA. *See Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993) (earnings below the guidelines will not conclusively show that an employee has not engaged in SGA). In *Pickner*, the Court held that, because the past work involved significant mental and physical activities, it was "substantial." *Id*.

Condley argues that because her work as a "teacher's aide" was part-time, it was not substantial. Pickner's work as an apartment manager was also part-time, just like Condley's work as a teacher's aide, and it required similar mental and physical abilities: the regulations provide that part-time work, like Pickner's and Condley's may still be considered "substantial." 20 C.F.R. § 404.1572(a). The *Pickner* court

---

[2] SGA means work involving significant mental or physical activities that you do for profit. 20 C.F.R. § 404.1572. Condley argues that her earnings from three years as a part-time teacher's aide were not enough to reach SGA. The minimum monthly earnings required for SGA in the period at issue for past relevant work are 2001: $740.00, 2002: $780.00, and 2003: $800.00. https://secure.ssa.gov/poms.nsf/lnx/0410501015. Condley made approximately $10,998 per year (or $916.00 per month) in 2001, $9300.00 per year (or $775.00 per month) in 2002, and $9521.00 (or $793.00 per month) in 2003. (Tr. at 120).

held that even though Pickner's earnings were minimal, the work still comprised SGA. *Pickner*, 985 F.2d at 403. Here, Condley's earnings were not minimal: for the relevant three-year period, the earnings were either above or right at the threshold of SGA earnings (at most, only $7.00 per month below SGA). (Tr. at 120).

Condley testified that she worked for "three years solid" as a teacher's aide, and she described in some detail the assignments that were consistent with the job of teacher's aide. (Tr. at 394-397). It is relevant, for the purposes of SGA, to consider whether a claimant worked at the job for several years, and if it lasted long enough for the person to do it properly.[3] *See Reeder v. Apfel*, 214 F.3d 984, 989 (8th Cir. 2000); *Fraser v. Colvin*, 2013 WL 4483354, at *12 (D. Minn. Aug. 19, 2013); SSR 96-8p, n.2. The ALJ, having considered all of the factors required for work to be at the SGA level, did not err in finding that Condley's work as a "teacher's aide" qualified as past relevant work which rose to the level of SGA.

Finally, Condley's argument that the ALJ did not conduct a proper credibility analysis is without merit. Social Security Ruling 16-3p, 2016 SSR LEXIS 4 ("SSR 16-3p"), removed the word "credibility" from the analysis of a claimant's subjective

---

[3] The three years that Condley spent learning and performing the job of teacher's aide undermine her argument that it was composite work, or work that involved significant elements of two or more occupations and which could not be identified in the Dictionary of Occupational Titles. She specifically testified that she worked as a "teacher's aide." And the past relevant work that the ALJ said Condley could return to was "teacher's aide." (Tr. at 379).

complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p became effective on March 28, 2016, and the underlying analysis incorporates the same factors that were in place prior to the adoption of the new rule. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). The ALJ must still give consideration to all of the evidence presented relating to subjective complaints, including: 1) prior work record; 2) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

Here, the ALJ addressed Condley's prior work record at the hearing. In his decision, he addressed her daily activities, her level of pain, and her response to treatment. (Tr. at 377-378). He also detailed clinical findings. *Id*. He properly considered the consistency of Condley's subjective complaints.

## IV. <u>Conclusion:</u>

There is substantial evidence to support the Commissioner's decision that Condley was not disabled. The ALJ's decision was based on an adequate and sufficiently developed medical record; he did not err at Steps Two and Four; and he properly evaluated Condley's subjective complaints.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 9th day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE